IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UMPQUA BANK, an Oregon            Civil No. 10-6423-AA
chartered commercial bank,      OPINION AND ORDER

       Plaintiff,

   v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY, an Ohio
insurance company,

       Defendant.

_____

Michael E. Farnell
Seth H. Row
Parsons Farnell & Grein, LLP
1030 SW Morrison Street
Portland, Oregon 97205
    Attorneys for plaintiff

Kerry J. Shepherd
Maya Hamie Fitas
Markowitz, Herbold, Glade &
Mehlhaf, PC
Suite 3000 Pacwest Center
1221 SW Fifth Avenue
Portland, Oregon 97204

Page 1 - OPINION AND ORDER

Lewis K. Loss
Harry Tashjian IV
Thompson Loss & Judge, LLP
Two Lafayette Centre
1133 21st Street NW, Suite 450
Washington, DC 20036
    Attorneys for defendant

AIKEN, Chief Judge:

Defendant Progressive Casualty Insurance Company ("Progressive") moves for judgment on the pleadings. See Fed. R. Civ. P. 12(c). In response, plaintiff Umpqua Bank ("Umpqua") filed a motion for partial summary judgment. See Fed. R. Civ. P. 56. For the reasons set forth below, Progressive's motion is denied; Umpqua's motion is granted in part.

## BACKGROUND

Umpqua holds a "Directors & Officers Liability Policy" (the "Policy") with Progressive. Under the Policy, Umpqua is protected from liability for suits arising out of its "wrongful acts."

In 2009, the trustee of one of the bank's former clients, Summit Accommodators, Inc. ("Summit"), and a group of former Summit customers, filed a civil suit against Umpqua for allegedly knowingly aiding and abetting Summit in the perpetration of a multi-million dollar Ponzi scheme (the "underlying litigation").

In September 2010, the parties settled the underlying litigation. Progressive agreed to fund Umpqua's defense; however, when Umpqua sought coverage under the Policy for the settlement amount, Progressive denied its duty to indemnify and refused to contribute. Unable to resolve these coverage issues, Progressive temporarily agreed to cover 41% of Umpqua's portion of the

Page 2 - OPINION AND ORDER

settlement, subject to a full reservation of its rights.

On December 23, 2010, Umpqua filed a breach of contract claim in this Court, alleging that Progressive's refusal to fund the entirety of the settlement constituted a breach of the Policy.  On February 7, 2011, Progressive filed a counterclaim, asserting, in part, that it was exempt from coverage because the complaints in the underlying litigation alleged that Umpqua was "acting in bad faith," thereby triggering the Illegal Profit/Payment Exclusion (the "Exclusion") of the Policy.  As relief, Progressive sought restitution and a declaration that, under the Policy, it had no duty to indemnify Umpqua in the underlying litigation.

Progressive subsequently moved for judgment on the pleadings on these grounds.  Consequently, Umpqua moved for partial summary judgment pursuant to Fed. R. Civ. P. 56.

## STANDARDS

Judgment on the pleadings is proper where "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990).  A party may move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial.  Fed. R. Civ. P. 12(c).  For purposes of the motion, the allegations of fact by the nonmoving party are accepted as true and are construed in the light most favorable to that party, "while the allegations of the moving party which have been denied are assumed to be false."  Hal Roach

Page 3 - OPINION AND ORDER

Studios, 896 F.2d at 1550 (citations omitted); see also Schroll v.
Plinkett, 760 F.Supp. 1385, 1387 (D.Or. 1991).

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law." Fed. R. Civ. P. 56(a).
Substantive law on an issue determines the materiality of a fact.
T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors
Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party determined the authenticity of a dispute. Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of
a genuine issue of material fact. Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986). If the moving party shows the absence of a
genuine issue of material fact, the nonmoving party must go beyond
the pleadings and identify facts which show a genuine issue for
trial. Id. at 324.

Special rules of construction apply when evaluating a summary
judgment motion: (1) all reasonable doubts as to the existence of
genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to the
nonmoving party. T.W. Electrical, 809 F.2d at 630.

**DISCUSSION**

The issue in this case is whether the underlying litigation triggered the Exclusion. Progressive argues that the Exclusion is triggered due to the allegations of bad faith in the underlying litigation.

Conversely, Umpqua asserts that it is entitled to summary judgment because the underlying litigation did not, as a matter of law, involve allegations of bad faith. In the alternative, Umpqua contends that, in order for the Exception to apply, Progressive must actually prove that Umpqua acted in bad faith. As such, the resolution of this case turns on the interpretation of the Policy.

I. Legal Standard for Insurance Policy Interpretation

It is undisputed that the interpretation of an insurance policy is a question of law, to be determined by this Court. Hoffman Constr. Co. v. Fred S. James & Co. of Or., 313 Or. 464, 469-71, 836 P.2d 703 (1992).

In construing the meaning of an insurance policy, "'[t]he primary and governing rule is to ascertain the intention of the parties.'" Hoffman, 313 Or. at 470 (quoting Totten v. N.Y. Life Ins. Co., 298 Or. 765, 770, 696 P.2d 1082 (1985)). In so doing, the court examines the terms and conditions of the policy; undefined terms are given their ordinary and plain meaning. Groshong v. Mutual of Enumclaw Ins. Co., 329 Or. 303, 307-8, 985 P.2d 1284 (1999). Oregon courts refer to the dictionary when determining the ordinary and plain meaning of an undefined term in an insurance policy, except where that term has already been

construed by a previous court; there, the court construes the disputed term consistent with relevant precedent. See Gonzales v. Farmers Ins. Co. of Or., 210 Or. App. 54, 60-5, 150 P.3d 20 (2006), aff'd, 345 Or. 382, 196 P.3d 1 (2008).

Where the disputed term has no plain meaning, "that is, if the term is ambiguous [because it is capable of more than one reasonable interpretation], [the court] examine[s] that term within the context of the policy as a whole." Dewsnup v. Farmers Ins. Co. of Or., 349 Or. 33, 40, 239 P.3d 493 (2010) (citing Hoffman, 313 Or. at 470). If, after examining the text and context of the policy, the disputed term remains ambiguous, the court then "construe[s] the term against the drafter and in favor of the insured." Id. (citing Hoffman, 313 Or. at 470-71). Conversely, where the disputed term is unambiguous, it is enforced as written. Groshong, 329 Or. at 308.

II. Policy Terms

The Exclusion at issue reads:

Illegal Profit/Payment Exclusion - The **Insurer** shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** arising out of or in any way involving: (1) any **Insured** gaining, in fact, any profit, remuneration, or financial advantage to which the **Insured** was not legally entitled; (2) payment by the **Company** of inadequate or excessive consideration in connection with its purchase of **Company** securities; or (3) conflicts of interest, engaging in self-dealing, or acting in bad faith.

Def.'s Answer, Ex. A, Policy at 11 (emphasis in original).

The Policy defines "Loss" as "any amount which the **Insured** is legally obligated to pay resulting from a **Claim**, including . . .

Page 6 - OPINION AND ORDER

settlements." Id. at 8 (emphasis in original). Additionally, the
Policy defines "Claim" as "a civil proceeding commenced by the
service of a complaint or similar pleading . . . for a **Wrongful
Act.**" Id. at 7 (emphasis in original). Finally, "Wrongful Act" is
defined as "any actual or alleged error, omission, misstatement,
misleading statement, neglect or breach of duty." Id. at 10.  The
Policy, however, does not define "acting in bad faith."

III.  Analysis

Generally, when an insurance policy does not define a critical
term, the court's first task is to give that term meaning within
the context of the dispute.  Here, while the meaning of the phrase
"acting in bad faith" is relevant, I find it is unnecessary at this
stage in the proceedings to construe that phrase, as the issue of
whether the Exclusion is triggered simply by allegations in the
complaint is dispositive.

Umpqua argues that Progressive must first establish that the
bank was "acting in bad faith" in order for the Exclusion to apply.
Because the underlying litigation settled, fault was never
allocated between the parties and, thus, it was never established
whether "bad faith" actions were involved.

Progressive asserts that Umpqua's loss is not covered under
the Policy based solely on the allegations in the underlying
litigation.  Specifically, Progressive contends that, when the
relevant provisions of the defined terms are incorporated, the

Page 7 - OPINION AND ORDER

Exclusion can be interpreted to include "alleged acts" of bad faith and, as such, should be read as follows: "Insurer shall not be liable to make payment for any Loss, other than Defense Costs, in connection with any civil proceeding against the Company for an **alleged** [act] arising out of or in any way involving acting in bad faith." Def.'s Memo. in Support of Mot. J. Plead. 10; Def.'s Reply to Mot. J. Plead. 17 (bold emphasis and bracketed word in original). As such, Progressive argues that the allegations in the underlying litigation, which postulate that Umpqua aided and abetted in the perpetration of a multi-million dollar Ponzi scheme, are so egregious that they are sufficient to trigger the Exclusion under any interpretation of the phrase "acting in bad faith." Progressive's construction, however, is flawed for three reasons.

First, contrary to Progressive's surreptitious interpretation, the Exclusion does not actually state that it is triggered by allegations of acts of bad faith in a civil complaint. In fact, the word "alleged" is at no point used within the Exclusion; further, that term is not included in the definition of the relevant defined terms "Loss" and "Claim." See Policy at 7-11. As discussed above, a "Claim" is "a civil proceeding . . . for a Wrongful Act." A "Wrongful Act," in turn, is defined as "any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty" by Umpqua.

As such, in its attempt to avoid its contractual duty to indemnify, Progressive erroneously substitutes the term "alleged act" where the Policy, in fact, should read: "a civil proceeding

Page 8 - OPINION AND ORDER

for any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty." Once this disparity is resolved, it becomes clear that, to the extent the Exclusion incorporates any reference to "alleged" conduct, it is merely in regard to when the duty to defend or indemnify is triggered. In other words, a "Claim" does not arise under the Policy until a third-party instigates a civil proceeding through the filing of a complaint, in which Umpqua's allegedly wrongful acts are recited.

Second, and most importantly, when Progressive intended the Policy exclusions to be activated by mere allegations, it did so expressly within the actual text of the Policy. For example, the Pollution Exclusion states: "**Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving . . . the actual, alleged or threatened discharge . . . of **Pollutants**." Policy at 11 (bold emphasis in original, underlined emphasis added). Similarly, the Bodily/Personal Injury and Property Damage Exclusion provides that the "**Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged bodily injury." Id. at 9 (bold emphasis in original, underlined emphasis added).

The preamble language in these exclusions is virtually identical to the Exclusion at issue in this case, the main distinction being the affirmative inclusion of the word "alleged." The addition of "alleged" would be redundant and, as such, meaningless, if Progressive truly intended these exclusions to be

triggered solely by the allegations of a complaint. Accordingly, these instances establish that where Progressive intended to exclude liability for alleged conduct, it did so explicitly.

Third, at the very least, Progressive's imprecise drafting allows the Exclusion to have more than one reasonable interpretation. Therefore, even accepting Progressive's interpretation as being plausible, this Court would be required to construe the Policy in favor of coverage. <u>Dewsnup</u>, 349 Or. at 40.

Accordingly, it is not necessary for this Court to determine whether the allegations in the underlying litigation, as a matter of law, involve allegations of bad faith. Instead, I find that, in order for the Exception to apply, Progressive must actually prove that Umpqua was "acting in bad faith." Because, however, the underlying litigation settled, fault has not been determined for coverage purposes. <u>See Home Indem. Co. v. Stimson Lumber Co.</u>, 229 F.Supp.2d 1075, 1090 (D.Or. 2001) (underlying settlement is not preclusive as to the parties' fault in a coverage case). Therefore, Progressive's motion is denied and Umpqua's motion is granted in part.

## CONCLUSION

Progressive's motion for judgment on the pleadings (doc. 24) is DENIED. Umpqua's motion for summary judgment (doc. 29) is GRANTED in part and DENIED in part as follows: GRANTED in regard to the issue of whether the Exclusion may be applied based solely on the allegations made in the underlying litigation; and DENIED in

regard to whether the underlying litigation arose out of allegations of "bad faith." Finally, Umpqua's request for oral argument is DENIED as unnecessary.

    IT IS SO ORDERED.
    Dated this 14 of November 2011.

                        _____
                              Ann Aiken
                    United States District Judge

Page 11 - OPINION AND ORDER